UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| RODERICK MCALPIN, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | No. 2:17-CV-169-DCLC-CHS |
| RANDY LEE, Warden, | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION

Petitioner Roderick McAlpin, a Tennessee inmate proceeding pro se, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254 challenging his Tennessee judgments of conviction for criminal trespass and possession with intent to sell more than 0.5 grams of crack cocaine in a school zone. Having considered the submissions of the parties, the State-court record, and the law applicable to McAlpin's claims, the Court finds that the petition should be denied.

**I.   SUMMARY OF EVIDENCE & PROCEDURAL HISTORY**

At around 3:30 a.m. on September 11, 2012, Knoxville Police Department Officer Joel Ascencio was patrolling the area of the Western Heights housing project when he observed McAlpin walking between some buildings [Doc. 11-2 p. 23, 26-27]. The housing project maintains a "no trespass list" to keep non-residents off the property, so Officer Ascencio approached McAlpin to ask if he lived there [*Id*. at 27]. Upon doing so, Officer Ascencio saw McAlpin make a throwing motion with his hand, and the officer noted a strong odor of alcohol on McAlpin's breath [*Id*. at 27-28]. He subsequently learned that McAlpin was on the "no trespass list" and had been served with notice not to trespass [*Id*. at 28-29]. Officer Ascencio told McAlpin to sit on the curb in front of his cruiser while the officer waited for backup to arrive [*Id*. at 29-30].

Officer Ascencio walked over to the area where McAlpin had been standing and found a bag of crack cocaine lying on top of the grass [*Id*. at 29-30, 49]. Fewer than 10 minutes had elapsed between the time he saw McAlpin make the throwing motion and the time he found the crack cocaine [*Id*. at 53]. Officer Ascencio did not see any other pedestrians or motorists in the area at the time [*Id*. at 52, 60]. McAlpin did not have any drug paraphernalia on his person, indicating to Officer Ascencio that McAlpin did not intend the drugs for personal use [*Id*. at 31, 57]. Further, the consistency and size of the individual rocks indicated to Officer Ascencio that they were intended to be sold or delivered [*Id*. at 37]. Officer Ascencio used a field test kit to weigh the crack cocaine, which weighed 2.8 grams [*Id*. at 38]. McAlpin was arrested [*See id*. at 36].

Knoxville Police Department Sergeant Joshua Shaffer, a supervisor of the repeat offender unit, examined the crack cocaine found by Officer Ascencio and determined it was "probably freshly cooked" because of what "appear[ed] to be particles sticking probably from the moisture" [*Id*. at 65, 77]. The bag contained a "larger chunk" and "some smaller individual pieces that ha[d] been broken off" [*Id*. at 77]. Sergeant Shaffer testified that an individual "rock," weighing 0.1 to 0.2 grams would be worth $20 [*Id*. at 77-78]. He estimated the value of the crack cocaine found by Officer Ascencio, once broken into individual rocks, would be worth between $280 and $560 [*Id*. at 78]. Sergeant Shaffer agreed with Officer Ascencio that, based on his examination of the evidence, the crack cocaine was intended for sale or delivery [*Id*. at 82-83].

A Knox County Criminal Court jury convicted McAlpin of criminal trespass and possession with intent to sell more than 0.5 grams of a Schedule II controlled substance within 1000 feet of a school [Doc. 11-1 p. 60, 64][1]. He received an effective sentence of 16 years [*Id*.].

---

[1] The Court notes that McAlpin was actually convicted of four felony drug charges, but those were merged into his conviction of possession with intent to sell more than 0.5 grams of cocaine within 1,000 feet of a public school [*See* Doc. 8-1 p. 60-63].

The Tennessee Court of Criminal Appeals ("TCCA") affirmed the judgments on October 2, 2014. *State v. McAlpin*, No. E2013-02267-CCA-R3-CD, 2014 WL 4952790, at *1 (Tenn. Crim. App. Oct. 2, 2014), *perm. app. denied* (Tenn. Jan. 16, 2015) ("*McAlpin I*"). The Tennessee Supreme Court denied discretionary review on January 16, 2015.

McAlpin filed a timely pro se petition for State post-conviction relief in the Knox County Criminal Court [Doc. 11-8 p. 4-15]. The post-conviction court appointed counsel, and counsel filed an amended petition on May 11, 2016 [*Id*. at 28-29, 37-42]. Following an evidentiary hearing, the post-conviction court denied the petition [*Id*. at 44-49]. McAlpin appealed, and the TCCA affirmed the judgment of the post-conviction court on April 21, 2017. *McAlpin v. State*, No. E2016-01482-CCA-R3-PC, 2017 WL 1437169, at *2-3 (Tenn. Crim. App. Apr. 21, 2017) *perm. app. denied* (Tenn. Aug. 16, 2017) ("*McAlpin II*"). The Tennessee Supreme Court denied discretionary review on August 16, 2017.

McAlpin filed the instant petition for writ of habeas corpus on or about September 7, 2017, raising the following claims, as paraphrased by the Court:

    Claim One:    The convictions were not supported by legally sufficient evidence.

    Claim Two:    The trial court should have suppressed evidence collected from an illegal stop.

    Claim Three:    Trial counsel rendered ineffective assistance in failing to:
        1.    Challenge a sentence enhancement;
        2.    Call an important witness;
        3.    Cross-examine State witnesses;
        4.    Object to inadequate jury instructions; and
        5.    Examine physical evidence.

[Doc. 1]. The Court ordered Respondent to answer or otherwise respond to the petition, and Respondent complied by filing an answer on July 27, 2018 [Doc. 13]. This matter is now ripe for review.

## II. LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. This standard will allow relief on a federal claim decided on its merits in State court only where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State-court's factual

4

findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available State remedies, and the State court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a State procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the State's procedural rules, or that his trial counsel rendered ineffective assistance. *See id*. at 753. Additionally, the prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimension") (emphasis in original). A fundamental miscarriage of justice of occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### III. McALPIN'S CLAIMS

#### A. Sufficiency of the Evidence Claim

McAlpin first asserts that the evidence was legally insufficient to sustain his convictions, as the evidence against him was purely circumstantial [Doc. 1 p. 4; Doc. 11-4 p. 12-13].

A challenge to the sufficiency of the evidence is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which allows a reviewing court to set aside a verdict on the basis of insufficient evidence only if, "after viewing the evidence in the light most favorable to the prosecution," no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution and must defer to that resolution, because such a standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Because both the AEDPA and the *Jackson* standard apply to insufficiency claims, this Court's review is doubly deferential. *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

At the outset, the Court notes that circumstantial evidence is sufficient to sustain a conviction; "juries are routinely instructed that the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence." *Desert Palace v. Costa*, 539 U.S. 90, 100 (2003). Under State law, possession with intent to sell more than 0.5 grams of a Schedule II controlled substance is defined as an offense where "a defendant. . . knowingly . . . [p]ossess[es] a controlled substance with intent to manufacture, deliver[,] or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4). Here, Officer Ascencio testified that he saw McAlpin throw something in the grass and shortly thereafter found a bag of cocaine in the grass. Officer Ascencio testified that no one else had been in the vicinity between the time McAlpin made a throwing

motion and when he discovered the baggie of cocaine. The contents of the baggie tested positive for crack cocaine, and evidence was presented to illustrate that the drugs were intended for sale rather than personal use. Therefore, it is reasonable to conclude that the circumstantial evidence was sufficient to sustain the jury's verdict. Accordingly, the decision rejecting this claim is not contrary to, nor is it an unreasonable application of, the *Jackson* standard, nor is it based upon an unreasonable determination of facts in light of the evidence presented. McAlpin is not entitled to federal habeas relief on this claim.

B. **Suppression of the Evidence Claim**

McAlpin's second federal habeas claim is that the trial court erred in denying his suppression motion, as Officer Ascencio lacked articulable cause to stop or detain McAlpin [Doc. 1 p. 5].

A habeas petitioner may not seek habeas relief on a claim of illegal seizure or arrest if he had a full and fair opportunity to raise the claim in State court. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). The Sixth Circuit has set forth two distinct inquiries a court must perform when determining whether a petitioner may raise a claim of illegal arrest in a habeas action: First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a [F]ourth [A]mendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (citation and internal citation omitted). This inquiry is focused on whether there is "an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013).

Here, McAlpin presented his Fourth Amendment claim to the Tennessee courts, where it was considered and rejected at both the trial and appellate levels. *See McAlpin I*, 2014 WL

7

4952790, at *2. Thus, McAlpin cannot show that Tennessee's procedural mechanism, in the abstract, prevents litigants from raising and litigating these types of claims. He also raised the issue, which the Tennessee courts considered. Thus, McAlpin's presentation of his claim was not frustrated because of any failure of Tennessee's procedural mechanism established to address these claims. Accordingly, any claims concerning the validity of McAlpin's seizure and/or arrest are not cognizable on habeas review.

### C. Ineffective Assistance of Counsel Claims

In his final claim for federal habeas relief, McAlpin alleges that he received the ineffective assistance of trial counsel due to counsel's failure to: (1) challenge a sentence enhancement, (2) call an important witness, (3) cross-examine State witnesses, (4) object to inadequate jury instructions, and (5) examine physical evidence [Doc. 1 p. 7].

#### 1. Procedurally Defaulted Claims

McAlpin's ineffective assistance of counsel sub-claims 1, 3, and 4 were raised in McAlpin's post-conviction petition but were abandoned on post-conviction appeal [Doc. 11-8 p. 4-14; Doc. 11-10 p. 12-15]. A claim must be presented to the TCCA in order to meet the exhaustion requirement under 28 U.S.C. § 2254(b). *See Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003); *see also* Tenn. S. Ct. R. 39 (establishing presentation of claim to TCCA is sufficient to exhaust state remedies). Therefore, by failing to pursue these claims to the TCCA, McAlpin failed to fully exhaust these claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that proper exhaustion requires petitioner to pursue claim through "one complete round of the State's established appellate review process"). Accordingly, these claims are technically exhausted but procedurally defaulted by Tennessee's statute of limitation and prohibition against successive petitions. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is

procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule).

McAlpin has not argued that cause and prejudice exist to excuse the default, or that a fundamental miscarriage of justice would result from failure to review the claims. The Court otherwise notes that McAlpin cannot argue the alleged ineffectiveness of post-conviction counsel for failure to carry these claims forward on post-conviction appeal as "cause" for his default. *See West v. Carpenter*, 790 F.3d 693, 698 (6th Cir. 2015) (finding ineffectiveness of post-conviction counsel sufficient to establish "cause" does not apply "at post-conviction appellate proceedings because those proceedings are not the 'first occasion' at which an inmate could meaningfully raise an ineffective-assistance-of-trial-counsel claim") (citation omitted).

Accordingly, these claims are procedurally defaulted and barred from federal habeas review.

## 2. Properly Exhausted Ineffective Assistance of Counsel Claims

McAlpin's ineffective assistance sub-claims 2 (failure to call an important witness) and 5 (failure to examine physical evidence) were raised in McAlpin's post-conviction appeal to the TCCA and were properly exhausted [Doc. 11-10 p. 12-13, 15-16].

These claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief: (1) he must demonstrate constitutionally deficient performance, and (2) he must demonstrate actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. 668 (1984). Deficiency is established when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687-88. A reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to

"eliminate the distorting effects of hindsight." *Id*. at 689. In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id*.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id.* at 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id.* at 691.

On habeas review, the issue for the district court is not whether the *Strickland* standard is met, but rather, whether the State-court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a State court, a petitioner "must demonstrate that it was necessarily unreasonable" for the State court to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

### a. Failure to call witness

McAlpin first argues that his trial counsel was ineffective for failing to call Erica Johnson to testify at trial, as she would have testified that she was the mother of his child, that he was on his way to her apartment the night of his arrest, and that the neighborhood was generally deserted at night and would have not proved to be a likely place for drug customers [Doc. 1 p. 7; Doc. 2 p. 2].

Although this claim was raised in McAlpin's post-conviction petition, Johnson was not called to testify at the post-conviction hearing. *See McAlpin II*, 2017 WL 1437169, at *5. The

post-conviction court rejected this claim, finding that based on McAlpin's failure to provide Johnson's testimony, it had no way of determining if the testimony would have been either credible or a material aid to McAlpin's defense at trial. *Id*.

"To succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a postconviction petitioner should present that witness at the post-conviction hearing." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)). Generally, "the only way the petitioner can establish that. . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner" is to call the witness to the stand. *Id*. Here, McAlpin presented no such evidence, and therefore, it is not unreasonable to determine that no evidence supported McAlpin's claim. *See, e.g., Stewart v. Wolfenbarger*, 468 F.3d 338, 353 (6th Cir. 2006) ("The conclusion of both the state trial court and the state court of appeals, that there was no proper evidence to support Petitioner's claim [regarding what the witness' testimony would have been if the witness testified], was not contrary to or an unreasonable application of clearly established law.").

To the extent McAlpin implies that post-conviction counsel was ineffective for failing to present Johnson's testimony at the post-conviction hearing, the Court notes that a freestanding claim that post-conviction counsel was ineffective is not a cognizable basis for federal habeas relief. *See* 28 U.S.C. § 2254(i) (stating claims alleging ineffectiveness of collateral review counsel are not cognizable habeas claims); *Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings."); *Wallace v. Sexton*, 570 F. App'x 443, 454 (6th Cir. 2014) (finding "[t]he Supreme Court has not recognized ineffective assistance of post-conviction counsel as a free-standing constitutional claim").

Therefore, the Court finds that McAlpin has not shown that the TCCA's decision rejecting this claim was contrary to, or that it involved an unreasonable application of, *Strickland* and its progeny, or that it was based on an unreasonable determination of facts in light of the evidence presented. This claim does not warrant federal habeas relief.

### b. Failure to examine physical evidence

In his federal habeas petition, McAlpin offers no facts in support of his claim that trial counsel rendered ineffective assistance in failing to examine physical evidence [Doc. 1 p.7; Doc. 2 p. 3-4]. However, McAlpin did argue on post-conviction appeal that counsel rendered ineffective assistance in failing to order the fingerprint testing of the plastic baggie containing crack cocaine [Doc. 11-10 p. 12-13]. Accordingly, the Court presumes McAlpin's claim relates to the fingerprint testing of the baggie.

On post-conviction appeal, McAlpin claimed that trial counsel should have had the baggie tested for fingerprints in order to prove his innocence [*Id.*]. When this issue was raised during the post-conviction hearing, trial counsel stated, based on his prior experience as a police officer, that such tests are never run because such tests are never successful [Doc. 11-9 p. 40-41]. The post-conviction court credited trial counsel's testimony, and the TCCA correctly deferred to those credibility findings [Doc. 11-8 p. 45, 48]. *McAlpin II*, 2017 WL 1437169, at *5. As to the prejudice prong, the TCCA found that McAlpin could not demonstrate prejudice as a result of the lack of fingerprint testing given the State's "overwhelming proof" of McAlpin's guilt at trial. *Id.* at *5.

The State courts' conclusions are supported by the record and the prevailing law. Therefore, the Court finds that McAlpin has not shown that the TCCA's decision rejecting this claim was contrary to, or that it involved an unreasonable application of, *Strickland* and its

progeny, nor that it was based on an unreasonable determination of facts in light of the evidence presented. This claim does not warrant federal habeas relief.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## V. CONCLUSION

McAlpin has failed to demonstrate an entitlement to federal habeas relief. Therefore, his petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A certificate of appealability from this decision will be **DENIED**.

Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge